**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 03 CR 0855 (-4) |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| GARY ROBERSON. ) | |

**SENTENCING MEMORANDUM AND ORDER**

Defendant Gary Roberson ("Roberson") pled guilty to the September 4, 2003 armed robbery of the Plaza Bank in Chicago and, on October 12, 2005, the court sentenced him to 85 months imprisonment. Specifically, the court imposed the mandatory consecutive 84-month sentence for violation of 18 U.S.C. § 924(c)(1)(A)(ii) (knowingly possessing a firearm in furtherance of, and using, carrying, and brandishing a firearm during, and in relation to, a crime of violence), charged in Count II, and an additional one-month sentence for the bank robbery in violation of 18 U.S.C. § 2113(a) and (d), charged in Count I. In imposing a sentence for the bank robbery (Count I) that was below the range of 46-57 months prescribed by the U.S. Sentencing Commission Guidelines (the "Guidelines"), the court observed that if Roberson had been charged by the Government with a single count of bank robbery, without the statutory 84-month mandatory minimum addition for brandishing the firearm, but with the 5 point offense level Guideline enhancement for the brandished firearm factored into the Guidelines computation, § 2B3.1(b)(2)(C), Roberson's final Guidelines range for his real offense conduct would have been 78-97 months. The court's imposition of a total sentence of 85 months was intended both to account for the consecutive mandatory minimum of 84 months and to place the sentence squarely in the middle of the 78-97 month Guidelines range for the precise real offense

conduct involved in this case. This court imposed this sentence because, given the aggravating and mitigating factors involved in this case, it found the guideline sentence to be both the most reasonable sentence and the sentence most appropriate to achieve the objectives of § 3553(a). It chose the middle of the range in order to achieve these objectives consistent with the imposition of the 84 month mandatory minimum for Count II.

The government appealed and, on January 17, 2007, the Seventh Circuit reversed the sentence and remanded with instructions to resentence Roberson in conformity with its opinion. *United States v. Roberson*, 474 F.3d 432 (7th Cir. 2007). In its opinion, the Seventh Circuit found that the sentence of 85 months imposed by this court was unreasonable. *Id.* at 435-36. According to the court of appeals, the court should have "picked a sentence for the bank robbery without regard for the fact that a gun had been used in it, and then tacked on 84 months [the mandatory statutory penalty for brandishing a firearm during the robbery]." *Id.* at 434. The Seventh Circuit pointed out that the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), which made the sentencing guidelines advisory, did not authorize the court to ignore statutory sentencing ranges. Although the sentence was in excess of the 84-month mandatory minimum, the Seventh Circuit found that by giving only a one-month sentence for the count which did not carry a mandatory minimum, this court failed to effectuate the Count II mandatory minimum. *Roberson*, 474 F.3d at 434. According to the appellate court, a reasonable one-month sentence for bank robbery was "conceivable" only in an "extraordinary case," but the facts presented in the instant case were so far removed from "extraordinary" that a one-month sentence could not possibly be reasonable. *Id.* at 435. Because the Seventh Circuit's holding required that the sentence on Count I be evaluated for reasonableness in isolation from the "tacked on" 84-month mandatory minimum for Count II, it did not find it appropriate to evaluate

2

the entire sentence for reasonableness. Indeed, the central disagreement between the approach of this court and that of the court of appeals was that this court sought to impose a reasonable sentence for both counts of conviction, while the court of appeals required that, in order to effectuate the government's decision to charge the case with a count bearing a mandatory minimum, a reasonable sentence be imposed for the count not bearing a mandatory minimum, to which the mandatory minimum should then be "tacked on."[1]

There are three significant legal questions implicit in this reversal. **The first** is whether, if the government can charge the precise real offense conduct in one of two ways (one count with enhancements yielding a guideline range of 78-97 months, or two counts charging the offense as one count of simple bank robbery with a second count for brandishing a firearm, bearing a 7 year mandatory minimum, yielding a guideline sentence of 130-141 months) and chooses the harsher way, the district court's discretion to impose a reasonable sentence for the whole offense is trumped by the government's exercise of its discretion? Does this render correct only those Guidelines adopted to reflect the 7-year mandatory minimum (46-57 months for Count I plus 84 months for Count II: 130-141 months), or may the sentencing court consider the guidelines applicable if the case had been charged differently (78-97 months)? In other words, does the government's exercise of its discretion to charge in the harshest possible way constrain the district court's discretion so that it must ignore the Guidelines developed for the total real offense conduct and choose the alternative Guidelines that reflect the mandatory

---

[1] At least three circuits have followed the Seventh Circuit's reasoning. *See United States v. Molina,* 530 F.3d 326 (5th Cir. 2008); *United States v. Hatcher*, 501 F.3d 931 (8th Cir. 2007); *United States v. Franklin*, 499 F.3d 578 (6th Cir. 2007). The Seventh Circuit's opinion, and these decisions, are consistent with the Sentencing Commission's directive on consecutive mandatory minimums. U.S.S.G. § 5G1.2(a). *But see* cases cited at pp. 9-10, *infra.*

minimum?  **The second** is whether, when a case is charged in multiple counts, one of which bears a consecutive mandatory minimum, the district court is permitted to impose a reasonable sentence for the entire real offense conduct, or must it impose a reasonable sentence for the count not bearing a mandatory minimum and then "tack on" the mandatory minimum?  **The third** is whether, when the government has chosen to charge the case in multiple counts, one of which bears a consecutive mandatory minimum, instead of in one count, relying on the Guidelines to add enhancements to the offense level to account for the real offense conduct involved, the Guideline sentence for the single count including enhancements is *per se* unreasonable because it "short changes" the mandatory minimum?

Since the Seventh Circuit handed down its opinion in this case, the United States Supreme Court has clarified the post-*Booker* sentencing landscape.  In *Gall v. United States*, 128 S. Ct. 586 (2007),  the Court held that, when reviewing a sentence imposed by a district court for abuse of discretion, an appellate court must first ensure that no procedural error was committed.  *Id.* at 597.  Upon concluding that there is no procedural error, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.  *Id.*  If the sentence is outside the range of the Sentencing Guidelines, the appellate court may not apply a presumption of unreasonableness.  *Id.*  It may consider the extent of the deviation, but must give due deference to the district court's decision that the factors described in 18 U.S.C. § 3553(a), on the whole, justify the extent of the variance.  *Id.*  The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.  *Id.*

Furthermore, in *Kimbrough v. United States*, 128 S. Ct. 558 (2007), the Court held that a district judge must include the Sentencing Guidelines range in the array of factors warranting

4

consideration in the determination of a reasonable sentence. *Id.* at 564. The judge may determine, however, that, in a particular case, a within-Guidelines sentence is "'greater than necessary' to serve the objectives of sentencing" under 18 U.S.C. § 3553(a). *Id.* Because the Court's reasoning in *Kimbrough* has considerable bearing on the instant case, it is worthwhile and instructive to examine it in more detail.

In *Kimbrough*, the defendant pled guilty to conspiracy to distribute crack and powder cocaine; possession with intent to distribute more than 50 grams of crack cocaine; possession with intent to distribute powder cocaine; and possession of a firearm in furtherance of a drug-trafficking offense. *Id.* The district court calculated the sentence, in accordance with the Sentencing Guidelines, which yielded a sentence of 168 to 210 months for the three drug offenses. *Id.* at 565. The Guidelines sentence for the firearm offense was 60 months, the statutory mandatory minimum. *Id.* Thus, Kimbrough's final advisory range under the Guidelines was 228 to 270 months. *Id.* A sentence in that range, concluded the court, would have been greater than necessary to accomplish the purposes of sentencing set forth in § 3553(a). The court also commented upon the "disproportionate and unjust effect that crack cocaine guidelines have in sentencing," explicitly contrasting the Guidelines range of 228 to 270 months with the range of 97 to 106 months that would have been applicable, all other circumstances being equal but inclusive of the 60-month firearm offense, had Kimbrough possessed an identical amount of powder cocaine. *Id.* Rejecting the Congressionally-directed crack guidelines and Congress' insistence that crack be sentenced 100 times more harshly than powder cocaine, the district court sentenced Kimbrough to 180 months (120 months for each drug charge, to run concurrently, plus the mandatory minimum 60-month firearm charge). *Id.*

The Fourth Circuit, in an unpublished order, vacated the opinion of the district court,

5

holding that a sentence "outside the [G]uidelines range is per se unreasonable when based on a disagreement with the sentencing disparity for crack and powder cocaine offenses." *United States v. Kimbrough*, 174 Fed. App'x 798, 799 (4th Cir. 2006).

The Supreme Court reversed the appellate court, holding that the district court did not abuse its discretion in imposing a sentence that was 4.5 years below the minimum of the Guidelines range. The Court noted that the district court properly evaluated the circumstances of Kimbrough's particular case and appropriately accorded weight to the Sentencing Commission's consistent argument that the 100-to-1 disparity in sentencing between crack and powder cocaine was at odds with the requirements of § 3553(a). *Kimbrough*, 128 S. Ct. at 576.

At the center of the Court's reasoning was the fact that the 100-to-1 disparity between crack and powder cocaine had its origins, not in the empirical method generally employed by the Sentencing Commission, but rather in the Anti-Drug Abuse Act of 1986 (the "1986 Act"), 100 Stat. 3207, which was incorporated by the Commission into the Guidelines. Although the Commission subsequently attempted to amend the Guidelines to reduce the crack-powder disparity, Congress prevented it from doing so pursuant to 28 U.S.C. § 994(p). *See* Pub. L. 104-38, § 1, 109 Stat. 334. The Court therefore found itself addressing the central question of *Kimbrough*: whether "a specific policy determinatio[n] that Congress has directed sentencing courts to observe" is an exception to the "general freedom that sentencing courts have to apply the [ § 3553(a) ] factors." 128 S. Ct. at 570.

The Court concluded that it was not. The Court noted that the crack/powder disparity originated in the mandatory minimum sentences established by the 1986 Act rather than via the Commission's usual methods of analyzing empirical data and national experience. *Id.* Given this, among other factors, the Court concluded that "it would not be an abuse of discretion for a

district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Id*. at 575.

In the instant case, there was no specific policy determination that Congress had directed the courts to observe: Congress had in fact legislated two distinct ways of charging bank robbery in which a firearm was brandished, only one of which bore a mandatory minimum, thus leaving to the government's discretion the choice whether to charge in a way which brought the mandatory minimum into play. Thus, *Kimbrough's* central question–whether "a specific policy determinatio[n] that Congress has directed sentencing courts to observe" is an exception to the "general freedom that sentencing courts have to apply the [ § 3553(a) ] factors"–becomes a different but analogous question: Whether a discretionary determination that the government has made to include a count bearing a mandatory minimum rather than relying on Guideline enhancements to account for all the aggravated conduct is an exception to the general freedom of the sentencing court to apply the §3553(a) factors? The government, by choosing to charge the case with a count bearing a mandatory minimum, coupled with the court of appeals' decision that when the government so chooses, the district court is limited to choosing a reasonable sentence for the simple bank robbery charged in Count I and then "tacking on" the consecutive mandatory minimum, has created a not dissimilar sentencing disparity. Roberson, charged with a single count of bank robbery under 18 U.S.C. § 2113, with an enhancement for brandishing a firearm, would have faced a sentence based on an advisory Guidelines range of 78-97 months' imprisonment. However, when charged for precisely the same crime with one count of bank robbery in violation of 18 U.S.C. § 2113 (without the brandished firearm enhancement) and an additional count charging a violation of 18 U.S.C. § 924(c) (brandishing a firearm during a crime

7

of violence), the resulting Guidelines range is 130-141 months.  Thus, depending upon how a defendant so situated is charged, the sentencing disparity is at least 65%.  Given this wide disparity of potential sentencing ranges, but consistent with the empirical data underlying the Guidelines and the required consecutive mandatory minimum, the court imposed a sentence of 85 months: 84 months for the brandishing of a firearm in violation of § 924(c), and one month for the underlying bank robbery.

The court's reason for imposing this sentence was not to minimize the seriousness of Roberson's offense (as is obvious from the fact that a sentence in the middle of the Guidelines range was chosen), nor to undercut the statutory 84-month sentence required for brandishing the firearm.  Rather, its intention was to impose a reasonable sentence for all of the charged conduct consistent with the objectives of § 3553(a).  It did this by choosing a sentence in the middle of the Guidelines range for the real offense conduct at issue: bank robbery with the Guidelines enhancement for the brandishing of a firearm.  The court reasoned that to impose the 84-month statutory minimum for violation of § 924(c) and then add to it the Guidelines range of 46-57 months for a fictive unarmed bank robbery both provided an unreasonably punitive sentence (given both the disproportionality discussed above and the unique facts about this case and about this defendant) and also defeated the stated purpose of the Guidelines of sentencing Roberson based upon his "real offense" conduct.  Indeed, as an architect of the Guidelines has pointed out:

> The compatibility of the guidelines system and mandatory minimums is also in question.  While the Commission has consistently sought to incorporate mandatory minimums into the guidelines system in an effective and reasonable manner, in certain fundamental respects, the general approaches of the two systems are inconsistent. . . . Whereas the guidelines provide for graduated increases in sentence severity for additional wrongdoing or for prior convictions, mandatory minimums often result in sharp variations in sentences based on what are often only minimal differences in criminal conduct or prior record.  Finally, whereas the guidelines incorporate a "real offense" approach to sentencing,

> mandatory minimums are basically a "charge-specific" approach wherein the sentence is triggered only if the prosecutor chooses to charge the defendant with a certain offense or to allege certain facts.

Orrin G. Hatch, *The Role of Congress in Sentencing: The United States Sentencing Commission, Mandatory Minimum Sentences, and the Search for a Certain and Effective Sentencing System*, 28 WAKE FOREST L. REV. 185, 194 (1993); *see also Neal v. United States*, 516 U.S. 284, 292 (1996).

Neither was the court's reasoning inconsistent with the approach of other district courts. Among reported cases, in *United States v. Angelos*, 345 F. Supp. 2d 1227 (D. Utah 2004), *aff'd*, 433 F.3d 738 (10th Cir. 2006), the court added a *one-day* sentence for three drug counts (the Guidelines range for which was 78-97 months) onto a 55-year sentence mandated by the statutory requirements of § 924(c). *Id*. at 1260. In *Angelos*, Judge Paul Cassell performed a lengthy and detailed analysis of the extreme disparities in sentencing resulting from a rigid application of the mandatory minimum sentence mandated by § 924(c) for the use of a firearm in conjunction with, and as opposed to, the Guidelines sentencing for the underlying offense. Judge Cassell emphasized that the expert agency appointed by Congress to evaluate federal sentences (the Sentencing Commission) had determined what a just and proper sentence for the drug counts at issue should be, and that these considerations were greatly and unjustly outweighed by the mandatory statutory term imposed by § 924(c). Significantly, Judge Cassell observed that a determination of the reasonableness of the sentence required consideration of the *whole* sentence: "the court cannot ignore the reality that Mr. Angelos will also be sentenced to 55 years on the § 924(c) counts, far in excess of what is just punishment for all his crimes." *Id*.

9

Likewise, in *United States v. Ezell*, 417 F. Supp. 2d 667 (E.D. Pa. 2006),[2] the court found that a statutory mandatory minimum sentence of 132 years under § 924(c) was unduly harsh. The court imposed the statutory minimum sentence, but added a nominal one day sentence for the additional six robbery counts. *Id.* at 678. And in *United States v. Ciszkowski*, 430 F. Supp. 2d 1283 (M.D. Fla. 2006), *aff'd,* 492 F.3d 1264 (11th Cir. 2007), the court imposed a nominal sentence of one year each, to be served concurrently, for charges of using a facility of interstate commerce with the intent to commit a murder-for-hire and drug possession with intent to distribute, in addition to a mandatory minimum sentence of 30 years under § 924(c) for possession of a firearm equipped with a silencer (supplied by an undercover agent) in furtherance of a crime of violence. *Id.* at 1288. The *Ciszkowski* court emphasized that when the mandatory minimum sentence exceeds the Guidelines sentence, the statutory purposes of the Guidelines sentence are fully accomplished by service of the minimum mandatory term. *Id.* at 1288. Therefore, the court reasoned, since § 924(c) neither specifies nor implies any particular duration of the sentence to which the § 924(c) sentence is consecutive, the presence of a mandatory minimum sentence for one of several counts of conviction is a factor the district court may consider in determining a sentence for the other counts of conviction and in determining a reasonable sentence under 18 U.S.C. § 3553(a). *Id.* at 1286.

In summary, it was the opinion of this court that the disparity in sentences between, on the one hand, the imposition of the Guidelines' sentence for a fictive "gun free" bank robbery plus the "tacking on" of the statutory 84-month sentence under § 924(c) and, on the other hand, the Guidelines sentence for the real offense conduct, including the Guidelines enhancement for

---

[2]*Ezell* was affirmed in an unpublished order, appearing at 265 Fed. App'x 90 (3d Cir. 2008).

brandishing a firearm, resulted in an unjust and unreasonable sentence with respect to the aims of § 3553(a) if the former was imposed. The court attempted to address that disparity, as did Judge Cassell in *Angelos*, by varying from the Guidelines in order to harmonize the results between the two, resulting in a sentence, as prescribed by the Guidelines, that was both consistent with the statutory mandatory minimum and reasonable given Roberson's real offense conduct.

The Seventh Circuit, while acknowledging that the Guidelines and § 924(c) "are not completely harmonious," rejected this court's approach as unreasonable. *Roberson*, 474 F.3d at 436. Furthermore, in a holding that seems to this court inconsistent with the later-decided *Kimbrough*, the appellate court held that a district court is not authorized to second-guess a prosecutor's decision to charge a particular crime in the harsher of two possible ways unless the decision is based on an invidious ground. *Id*. at 434. Finally, the appellate court held that when a defendant is subject to a mandatory minimum under § 924(c), the district court must calculate the sentence for the defendant's other offenses without regard to the mandatory minimum. *Roberson*, 474 F.3d at 434. *Accord United States v. Duncan*, 479 F.3d 924, 930 (7th Cir. 2007). Although the Seventh Circuit stated that the sentence as a whole must be reasonable, the meaning of this statement is not entirely clear. It held unambiguously that the reasonableness of the sentence on the count not bearing a mandatory minimum must be evaluated independently, and the length of the consecutive mandatory minimum may not be considered in evaluating the reasonableness of this sentence. In trying to craft a reasonable sentence for the count not bearing a mandatory minimum, the district court may not adjust the sentence to reflect.the fact that the defendant is subject to a consecutive mandatory minimum under § 924(c), as doing so effectively reduces the mandatory minimum sentence. *Roberson*, 474 F.3d at 436.

11

The significance of this issue in light of *Kimbrough* cannot be ignored. Whereas *Kimbrough* held that a judicial determination of the reasonableness of a sentence controls over a specific policy directive of Congress that would require a harsher sentence, the Seventh Circuit has held that a discretionary charging decision by the executive controls over a judicial determination of reasonableness.

Although the appellate court's opinion makes clear that Roberson must be resentenced, its conclusion that this court's review of mitigating factors was unreasonable ("[o]ne might have expected [the relevant] factors to push his sentence to the top of the guidelines range or even above it," 474 F.3d at 435) merits comment. The court carefully considered the mitigating factors it believed justified some reflection in this sentence. They were stated in the original order but are reiterated here more clearly and in more detail:

(1) The defendant was 19 years old at the time of the commission of the crime–still a teenager and barely an adult. He had accumulated his entire criminal history (III) within the 18 months preceding the crime involved here. Until he joined a gang at the age of 16, he did not live a criminally-oriented lifestyle. Indeed, the evidence before the court was that he had been an above-average student, who participated in sports, and who had no juvenile arrests. The defendant joined the Milwaukee Kings street gang at the age of 16, and it appears that he did so in anger, in the wake of significant problems in his home life. The defendant's trouble with the law started only after he became a member of a gang. Of his two prior offenses, one–attempted armed robbery–was very serious (the other, less so, was a charge of marijuana possession for possession of six marijuana blunts arising out of a vehicle stop for traffic infractions), and it was the probationary sentence he received for the robbery which added two criminal history points to his score. This represents a lot of criminal history in a very short time, based on one serious

prior felony.  This court, on reading all the materials presented in connection with the sentencing and seeing and hearing the people involved, especially the defendant, came to the conclusion that, considered in conjunction with all the other evidence, the defendant's history and characteristics, including his youth and his short, intense involvement with gangs and crime, this defendant could revert more easily than the typical defendant convicted of bank robbery to his prior, non-criminal lifestyle and that he wanted to do so.  Indeed, the defendant is not a typical habitual criminal but a young man who, in the company of the wrong people, went seriously wrong, very quickly but also very briefly.

       (2)       The defendant did not himself brandish a firearm during this robbery.  There is a dispute as to whether the defendant had a gun (he acted as if he had a gun and a codefendant told the government he had a gun, but Roberson himself denies it) but there is no dispute that he never brandished or exhibited any gun.  The fact that a codefendant brandished a gun, and the fact that defendant could have brandished, but did not brandish, a weapon himself, is a factor suggesting that defendant was not anxious to use a gun or appear trigger-happy, regardless of the different choice made by his codefendant Villatoro.  More typically, the defendant would have conformed to the more aggravated conduct of Villatoro, but he did not; in the company of someone acting like a violent gang member, Roberson acted differently.  Coupled with evidence that defendant has never physically harmed anyone, his non-conformity at this critical moment is another factor which favors Roberson's prospects for rehabilitation, besides making his moral culpability somewhat less than that of his codefendant or of the typical armed bank robber.

       (3)       Defendant turned himself in when he learned the FBI was looking for him.  The Seventh Circuit viewed this as an unimportant detail, noting that one of defendant's codefendants had already been arrested and suggesting that at this point, the jig was up.  It is true

that Shariq Batty, the look-out and one of the getaway drivers, had already been arrested, but two of the defendants who had not been arrested, Alcantara and Villatoro, fled to another state. The fact that defendant separated himself from Alcantara and Villatoro and turned himself in while they fled is another factor indicating a difference between this defendant and the others; significantly, it reflects this defendant's atypical decision not to conform to the actions of his codefendants.

(4)     The court was influenced by the defendant's strong and close relationship to his grandmother, with whom he lived during the period of his parents' divorce, and the difficulties the defendant had dealing with his mother's successive romantic relationships, following the divorce. The court was also influenced by the nature of the defendant's current ties to his mother and girlfriend, people who, according to the findings of the probation officer in the PSR, do not have a criminally-oriented lifestyle. The court was influenced by the PSR's comment that the defendant's grandmother commented on his "big heart" and the fact that the defendant had helped her and his mother care for his brothers and sisters. The court saw this as further evidence that the defendant had good core values to return to, if (as it appeared he wanted to) he relinquished the gang and its criminal lifestyle.

(5)     The court was influenced by its repeated contacts with Roberson and his manner during these repeated contacts. Perhaps because Roberson was the oldest child in his family and had assisted his mother for many years with the care of his siblings, and because he spent a great deal of time with his grandmother, with whom he had an unusually close relationship, Roberson was obviously comfortable talking with adults and the court was impressed by its contacts with him. He appeared more able than most defendants to explain his circumstances (such as his desire to change counsel at one point) and the details of his personal history, as well as his desire

to change the direction of his life.  These personal contacts convinced the court of the sincerity of Roberson's desire to change his life to a productive and law-abiding one.

At the resentencing hearing, information about Roberson's achievements while incarcerated were brought to the court's attention and confirmed the court's beliefs about Roberson's desire to reform his life.  Specifically, the court learned at the resentencing hearing that in his first two months in prison, Roberson, who had dropped out of school after the eighth grade, obtained his GED.  Moreover, Roberson was one of only nine inmates at Oxford who enrolled in an intensive culinary arts course offered by Fox Valley Technical College.  He took a full load of culinary courses during Summer 2006, Fall 2006 and Winter 2007, maintaining all As and Bs except for one C in an independent study.  In the Summer of 2007, Roberson was enrolled again in a full load of culinary courses, but was forced to drop the courses when he was moved to another institution, for reasons apparently related to the resentencing ordered in his case.  His mother, Estella Talamantes, gave this testimony at the resentencing hearing:

> Q: Since he's been in prison, have you been in touch with him?
>
> A: Oh, constantly.  I mean, well, he became a man in there, and our phone conversations and letters, I've noticed a change.  He has matured, I will say.  Not that I like that he has to be there to mature but I have seen a drastic change.  We could laugh.  I never thought I would be laughing on the other end of this phone conversation that he's in there, because we have great conversations, culinary school, he would send his menus when he was taking charge that week.  Copies of his menus we would discuss food conversations that I never thought we would discuss–he has just grown up so much and matured so much in the last few years.
> ...
> They're all positive attitude, positive conversations.  It's been a drastic change in our conversations.  No more yelling, screaming, disagreements.  He matured a lot.

Transcript of August 13, at 7-8.

The Seventh Circuit observed that it believed that the factors that the defendant had once been a good student and had a supportive family were "two-edged," *id.* at 435, and that if the

15

defendant had been a poor student from a broken home "these would have been argued as mitigating factors." *Id.* It stated, "The better off a defendant is, the better chance he has to go straight when he is released from prison–but the more inexcusable his criminal conduct." *Id.* It is true that almost any factor, considered in isolation, may be made to appear positive or negative, when employed by a talented rhetorician. But that is ignoring the *context*, the totality of the circumstances. The context here did not appear to this court to be anything like what the court of appeals described, and the court of appeals' analysis strongly suggests that this court did an inadequate job of explaining its reasoning. While acknowledging that the factual data, lifted out of context, could be argued in support of a heavier sentence, this court was influenced by its access to, and familiarity with, the individual case and the individual defendant before it. *See Rita v. United States*, 127 S. Ct. 2456, 2469 (2007).

This defendant came from an impoverished and broken home. Despite these factors, which so often lead to school failure and early delinquency, this defendant for many years succeeded in school, participated in sports, and stayed out of trouble; as the oldest of five children, he provided invaluable help to his mother and grandmother in caring for his younger siblings since his mother, a single parent, could not afford daycare for the younger children. Only as a teenager, at the age of approximately 16, did he become involved with a gang. The evidence indicates that strains in his family life contributed to his gang involvement and hence to his delinquency, but there is also a strong indication that the defendant and his family have reunited and have come to a common understanding of defendant's wrong prior path. It is a far more complicated picture than that of a person with many advantages who unaccountably went wrong. It is rather a picture of someone who resisted the lure of the streets for most of his youth; someone who is very young; someone whose criminal involvement–while extremely

16

serious–was extremely brief in duration, when considered in the context of his whole life; where atypical factors in the commission of the crime at issue suggest that defendant was not fully committed to a gang or criminal lifestyle such as that at critical points in this case he separated himself from the conduct of his fellow gang members; and where defendant's recent conduct is consistent with his representations to the court that he wants to set his future on a law-abiding course.

It is true that these factors must be balanced against the seriousness of the offense – the fact that codefendant Villatoro foreseeably brandished a gun during an armed bank robbery, threatening and terrifying many innocent people.  As the Seventh Circuit observed, the defendant "refused to cooperate when he was arrested" (by which the court of appeals presumably meant that the defendant refused to cooperate against his codefendants, since he turned himself in to the police and pled guilty), and failed "to reveal where he had stashed his share of the proceeds of the robbery."[3]  Whereas the history and characteristics of the defendant must be considered under § 3553(a), so should the nature and seriousness of the offense, as well as issues of specific and general deterrence.

While the court of appeals has instructed that the firearm part of this crime should be ignored when the court fashions a reasonable sentence for the robbery charged in Count I, how should the § 3553(a) factors be assessed if the most threatening aspects of this crime must be ignored in considering a reasonable sentence for Count I?  In trying to imagine the conduct charged in Count I in isolation from Count II, that is, ignoring Villatoro's brandishing of a

---

[3]These factors could be explained in various ways, but certainly refusal to cooperate is one of them.  At the resentencing hearing, the defendant stated that the gang would have retaliated against his family members if he had cooperated.

firearm during the course of the robbery, can the court ignore the tacked-on mandatory minimum in considering the issues of general and specific deterrence that § 3553(a) recites? Surely, even if the court completely ignores the brandished firearm in figuring out a punishment appropriate to the seriousness of the Count I bank robbery, can the incapacitation of the defendant and the deterrent effect on others be considered in isolation from the fact that whatever sentence the defendant receives on the gun-less Count I robbery, he receives an additional 84 months on Count II? It is possible that the presence of a mandatory minimum on one count should not be considered at all as part of the sentence for § 3553(a) purposes, that it should be imposed in the same judge-less, thoughtless way that a special assessment is imposed (*i.e.,* "tacked on"), but it is not clear that the Seventh Circuit intended to go this far.

This court, as it is required to do, must attempt to sentence defendant for a bank robbery as if there were no gun, and the sentence it imposes on this assumption is 36 months. The resulting sentence, 36 months plus 84 months for a total of 120 months, appears to this court longer than necessary to achieve the purposes of § 3553(a), but 36 months is the shortest sentence on Count I that is arguably consistent with the Seventh Circuit's mandate ("[A] sentence below the minimum guidelines sentence for the robbery in this case would be difficult, perhaps impossible, to justify as reasonable."). *Roberson*, 474 F.3d at 436. A three-year sentence for an unarmed bank robbery for a defendant in Criminal History Category III, given the unique factors present in this case, is not unreasonable. It may be that the intention of the mandate requires this court to impose a 46-57 months sentence on Count I, but since it appears that the Seventh Circuit may have misunderstood the factors this court relied on in sentencing the first time around, and since the Seventh Circuit's decision preceded *Rita*, *Gall*, and *Kimbrough*, this court will not leap to that conclusion without clearer guidance. Certainly, if the

Seventh Circuit says that anything less than 46 months is impossible to justify, rather than "difficult, perhaps impossible, to justify," the court will impose 46 months, as it must.

Thirty-six months is 10 months less than the Count I guidelines, and is imposed to reflect all the § 3553(a) factors, the factors that make defendant's blameworthiness somewhat less than that of the typical defendant, plus this defendant's greater than ordinary likelihood of redeeming his life, based on all the factors discussed above, as well as those set out in the court's original sentencing order. No consideration is given to Count II. The Count II sentence of 84 months is "tacked on," as it must be, as a consecutive mandatory minimum.

The court still believes that the most reasonable sentence for the offense as a whole is the guideline sentence (which accounts for all aspects of the real offense), 78-97 months, and that the sentence for this case as a whole, which bests serves the §3553(a) purposes, is the originally-imposed 85 months. If that sentence is unavailable, and if the court is required to sentence as if all there is in this case is an unarmed bank robbery, then 36 months accounts for this simple bank robbery in light of the mitigating evidence that convinces the court that this defendant's blame is somewhat mitigated by his youthful and brief criminal involvement, the other above-described mitigating factors and that he has a good chance of being rehabilitated.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 25, 2008